FILED
Jun 18, 2021
02:37 PM(CT)
TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **ROBERT GREVE,** | ) | **Docket No. 2018-07-0621** |
| **Employee,** | ) | |
| **v.** | ) | |
| **SOUTHERN INTEGRATED** | ) | |
| **SERVS.,** | ) | **State File No. 55332-2018** |
| **Employer,** | ) | |
| **and** | ) | |
| **BRIDGEFIELD CASUALTY INS.** | ) | |
| **CO.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This case came before the Court for an Expedited Hearing on June 10, 2021. Mr. Greve requested that the Court order Southern to pay for a surgery recommended by the authorized treating physician. Southern argued the requested surgery was neither causally related to the alleged injury nor medically necessary. For the following reasons, the Court holds Mr. Greve is not entitled to the requested surgery at this time.

### History of Claim

On July 20, 2018, Mr. Greve lifted a piece of iron and felt pain in his neck, left shoulder, and left arm. He sought treatment on his own from orthopedic surgeon Dr. Raymond Gardocki.[1] Dr. Gardocki obtained an MRI that revealed anatomic findings at the C5/6 and C6/7 levels of Mr. Greve's spine, including what he called a C6/7 herniated disc. Dr. Gardocki recommended an anterior cervical discectomy and fusion (ACDF) surgery at the C5/6 and C 6/7 levels.

---

[1] The parties did not enter these records into evidence, so the Court gleans this information from the medical depositions.

Mr. Greve stopped seeing Dr. Gardocki after choosing orthopedic surgeon Dr. Samuel Murrell from a panel provided by Southern. He first saw Dr. Murrell on December 12, 2018. Testifying by deposition, Dr. Murrell said he reviewed the MRI and agreed it showed a disc lesion at C 6/7. Dr. Murrell "felt" Mr. Greve sustained an injury on July 20 by history, and he said the disc lesion was "consistent" with Mr. Greve's symptoms.

Dr. Murrell recommended an EMG to test for ongoing radiculopathy. The EMG was positive, but for a C8 level radiculopathy rather than one at C6. He said it was "somewhat difficult" to explain the EMG findings given the MRI, so he recommended a myelogram. That test confirmed the MRI findings at C/5-6 and C/6-7 and, based on those findings, Dr. Murrell agreed with Dr. Gardocki that Mr. Greve should undergo the ACDF. As to causation, Dr. Murrell was asked whether the "surgical procedure was related to the lifting incident at work." He replied, "I felt it was given the history and the records provided."

Southern requested a Utilization Review (UR) of Dr. Murrell's recommendation. Dr. Robert Greenberg, an orthopedic surgeon, stated in a report that the ACDF procedure was neither medically necessary nor appropriate. Specifically, he said there was no documentation of a C6/7 radiculopathy based on the objective findings, and the EMG report of a C8 radiculopathy, "would not be affected by an ACDF at the C5/6 or C6/7 levels." Dr. Greenberg extensively quoted the ODG[2] guidelines as to why the ACDF did not meet the criteria supporting the procedure.

Dr. Murrell expressly disagreed with Dr. Greenberg. He asserted that Dr. Greenberg does not perform spinal surgery and did not review all of Mr. Greve's records. Further, in an office note, Dr. Murrell wrote without elaboration that Dr. Greenberg cited "indications from the DG [sic] guide which are not relevant but appear to be a cut and paste process for generic indications." During his deposition, Dr. Murrell maintained his disagreement with Dr. Greenberg and said he would still perform the ACDF if Mr. Greve had similar findings and wanted to proceed.

Southern also obtained an evaluation from orthopedic surgeon Dr. Bret Sokoloff, who examined Mr. Greve and reviewed the MRI, EMG, and myelogram. He believed Mr. Greve had "significant cervical pathology" but thought it was "primarily degenerative in nature." As to any work relation, Dr. Sokoloff said the pre-existing disease "may have been aggravated by heavy lifting," but he quantified the relation as "not > 51% originating from the reported lifting injury at work." He thought the recommended

---

[2] "ODG" refers to the Work Loss Data Institute ODG Guidelines as published by the Work Loss Data Institute. "Any utilization review of treatment must apply the ODG Guidelines . . . in determining whether treatment is medically necessary[.]" Tenn. Comp. R. & Regs. 0800-02-25-.03 (2018).

surgery should be covered under Mr. Greve's regular insurance "as the primary cause for the surgery is his degenerative spine."

Southern obtained another evaluation from neurosurgeon Dr. Laverne Lovell. He felt the degenerative changes were "more or less consistent with the patient's age." He did not believe the changes seen at C5/6 and C6/7 were severe enough to account for Mr. Greve's arm pain and also thought the EMG findings at the C8 level were unrelated to any problems at C5/6 and C6/7. For clarity, he recommended another EMG to rule out a peripheral nerve problem. That EMG was normal, showing neither peripheral nerve issues nor radiculopathy.

Dr. Lovell concluded that he did not "think [Mr. Greve] had a cervical spine injury at the workplace." As to the recommended surgery, he testified that he did not believe Mr. Greve had a surgical lesion at the proposed C5/6 and C6/7 levels, and surgery would be of no benefit.

Mr. Greve testified he is "getting worse," describing continued symptoms of radiating pain in his left arm and shoulder when he lifts or uses the arm. He said he sometimes cannot feel his fingers, and that he often cannot close them to grip. He wants Dr. Murrell to perform the recommended surgery.

He argued that Dr. Murrell's surgery recommendation is presumed correct under Tennessee Code Annotated section 50-6-204(a)(1)(H) (2020) because he is the authorized treating physician chosen from a panel. He further contended that section (a)(1)(I) requires Southern to rebut the recommendation by clear and convincing evidence. He noted Dr. Gardocki agreed he needed surgery and, though he did not object to its admission, argued the UR report was "hearsay."

For its part, Southern agreed with Mr. Greve that it must overcome the surgical recommendation by clear and convincing evidence. Southern claimed it did, citing Dr. Sokoloff's opinion that the need for surgery was unrelated to the injury, Dr. Lovell's opinion that surgery was unnecessary, and the UR physician's opinion that the surgery did not comply with the ODG guidelines. Southern noted that neither Dr. Murrell nor Mr. Greve appealed the UR determination.

**Findings of Fact and Conclusions of Law**

At this Expedited Hearing, Mr. Greve must prove he would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1). However, this lesser evidentiary standard does not relieve him of producing evidence that his injury arose primarily out of his employment at Southern; instead, it only allows some relief if his evidence does not rise to a "preponderance." *Buchanan v. Carlex Glass Co.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Sept. 29, 2015).

Both parties focused their arguments on the presumption afforded Dr. Murrell's opinion and the degree of evidence needed to rebut it. However, the case turns on a more basic analysis, one focused on Dr. Murrell's opinion itself.

Namely, an injury is compensable only if it arises primarily out of the employment. Tenn. Code Ann. § 50-6-102(14). Further, an injury causes the need for medical treatment only if it is shown to a reasonable degree of medical certainty to have contributed more than fifty percent in causing the need. Tenn. Code Ann. § 50-6-102(14)(C). A physician's opinion on those issues need not use the specific causation language of the statute, but it must sufficiently satisfy the statutory requirements. *Panzarella v. Amazon.com, Inc*., 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017).

Dr. Murrell testified that he "felt" Mr. Greve sustained an injury, and he "felt" the surgical procedure was "related to" it. In *Joiner v. UPS*, 2018 TN Wrk. Comp. App. Bd. LEXIS 54, at *23 (Sep. 24, 2018), the Appeals Board held a doctor's testimony that a condition is "related to" an event, "does not offer a measure of the 'contribution' that the employment provided to the injury or to the need for medical treatment, and it does not indicate whether such contribution was 'more than fifty percent (50%).'" The physician in *Joiner* was not asked "the measure of contribution" of the employment to the injury, and he did not say whether the employment contributed more than fifty percent to the need for surgery. The same is true here. Dr. Murrell was not asked the degree to which the employment caused Mr. Greve's injury or whether his work contributed more than fifty percent in causing the need for surgery.

The *Joiner* decision was an appeal from a compensation hearing. However, the Board has considered the same causation testimony at the expedited hearing stage. In *Miller v. Old Folks Mission Center, Inc*., 2019 TN Wrk. Comp. App. Bd. LEXIS 1, at *13 (Jan. 9, 2019), the treating physician also stated that he "considered Employee's condition to be a 'work-related injury.'" The Board found that, "[w]hile such a statement does not satisfy the standard of proof applicable at a compensation hearing, *when considered with other evidence presented at the expedited hearing*, it supports the trial court's determination that Employee is 'likely to prevail' on this issue at trial." *Id.* (Emphasis added).

Here, the converse is true: the "other evidence" does not support a determination that Mr. Greve would likely prevail at trial. To the contrary, three other physicians expressed an opinion that the recommended surgery was either unnecessary, unrelated to the injury, or contrary to the ODG guidelines. Thus, under the evidence presented, the Court cannot order Southern to pay for the surgery recommended by Dr. Murrell at this time.

**IT IS, THEREFORE, ORDERED AS FOLLOWS**:

4

1. Mr. Greve's request for the surgery recommended by Dr. Murrell is denied.

2. The Court sets a Status Hearing on **Monday, July 19, 2021, at 10:00 a.m. Central Time**. The parties must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Hearing. Failure to call might result in a determination of any issue without the party's participation.

**ENTERED June 18, 2021.**

_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits
1. Deposition of Dr. Samuel Murrell
2. Deposition of Dr. Laverne Lovell
3. Medical records of Dr. Bret Sokoloff
4. Collective medical records of Dr. Lovell, EMG report, Dr. Murrell, Utilization Review Denial, and Dr. Sokoloff report

Technical record
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Transfer Order
5. Notice of Expedited Hearing
6. Employee's Pre-Hearing Brief
7. Employer's Pre-Hearing Brief
8. Employer's Exhibit List
9. Employee's Exhibit List
10. Employer's Additional Exhibit List

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on June 18, 2021.

| Name | Via Email | Service Sent To: |
|---|---|---|
| Jeffrey P. Boyd, Employee's Attorney | X | jboyd@borenandboyd.com ataylor@borenandboyd.com |
| Meredith Weaver, Employer's Attorney | X | meredith.weaver@petersonwhite.com Beverly.uphoff@petersonwhite.com |

_____

**Penny Shrum, Court Clerk**
**Wc.courtcler@tn.gov**



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____
*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*